# IN THE UNITED STATES BANKRUPTCY
# COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 7 |
| | : |
| RITE WAY ELECTRIC, INC. | : |
| | : |
| Debtor | : BANKRUPTCY NO. 11-19633 |
| | : |
| TERRY DERSHAW, TRUSTEE | : |
| | : |
| PLAINTIFF | : |
| v. | : |
| | : |
| ALBERT A. CIARDI, III | : |
| | : |
| DEFENDANT | : ADV NO. 14-0026 |
| | : |
| TERRY DERSHAW, TRUSTEE | : |
| | : |
| PLAINTIFF | : |
| | : |
| v. | : |
| | : |
| CIARDI, CIARDI & ASTIN, P.C. | : |
| | : |
| DEFENDANT | : ADV. NO. 14-0027 |
| | : |

# OPINION

BY: STEPHEN RASLAVICH, UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

Terry Dershaw, Trustee of the above-captioned estate, has filed separate adversary proceedings against Albert A. Ciardi, III (Ciardi) and the law firm of which he is a principal, Ciardi, Ciardi & Astin, P.C., (hereinafter the "Law Firm"). The complaints seek to recover property and ask for other relief. Both Defendants have filed motions to dismiss the respective complaints. A hearing on the matters was held on March 19,

2014.  The Court thereafter took the matter under advisement.  For the reasons which

follow, the Motions will be granted and the Complaints will be dismissed.[1]

*The Complaints*

The Trustee's two complaints seek affirmative and injunctive relief.  First and

foremost, the Trustee seeks to recover property transferred by the Debtor to Defendants

before and after the bankruptcy filing.  Both actions seek to avoid the transfers under

express Bankruptcy Code provisions.  In addition, the complaints also plead state

common law causes of action to recover the same property.  Aside from affirmative

recovery, the Trustee asks the Court to require the Defendants to explain the

circumstances surrounding the transfers of property mentioned above.[2]

*Grounds for Dismissal*

The Defendants have moved to dismiss all counts of the Complaints for failure to

state a claim upon which relief may be granted.  Where the Trustee has alleged fraud,

the Defendants also maintain that his allegations lack the requisite heightened

specificity applicable to such claims.

*Pleading Standard*

To state a claim under Rule 8 of the Federal Rules of Civil Procedure, a

complaint must contain "a short and plain statement of the claim showing that the

---

[1] Because these matters involve a demand for turnover of property, requests for disallowance of a claim, the avoidance and recovery of preferential and fraudulent transfers, they are within this Court's "core" jurisdiction.  *See* 28 U.S.C. § 157(b)(2)(A),(E),(F),and (H) (including among core proceedings such causes of action)

[2] Both Complaints sought disallowance of Proofs of Claim filed by the defendants.  As it turns out, neither Defendant has filed a claim.  In his response to both Motions to Dismiss, the Trustee acknowledges that fact and will withdraw the counts which seek disallowance of Proofs of Claim.  See Brief in Response to Ciardi's Motion to Dismiss, 11 and Brief in Response to Law Firm's Motion to Dismiss, 14-15.  These counts are thus moot.

pleader is entitled to relief." F.R.C.P. 8(a)(2) (made applicable by B.R. 7008(a)).

However, "recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949,

173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct.

1955, 167 L.Ed.2d 929 (2007)).  Rather, "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at

678, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).  Where fraud is alleged, the

rules require the complaint to include specificity as to the "circumstances constituting

fraud" such as the "who, what, when, where, and how." *In re Dulgerian*, 388 B.R. 142,

147 (Bankr.E.D.Pa.2008) (citing *In re Rockefeller Center Properties, Inc. Sec.Litig.*, 311

F.3d 198, 217 (3d Cir.2002)).

*Analysis*

      Typically, the Court would analyze the Complaints separately.  However,

because the two actions plead common counts, because they are based on a common

core of facts, and because they involve related defendants, it will be more efficient to

analyze them together.  To that end, the Court begins with an analysis of the common

causes of action which seek affirmative relief.  For those counts, it will set forth the

applicable standard and test the allegations against Ciardi first and the law firm second.

Thereafter, the Court will review the remaining counts which request affirmative relief as

to a single defendant, again in the same order.  The Court has reserved until the end its

disposition of the Trustee's requests for injunctive relief based on Code § 329, because

the Court has certain concerns of its own over the minimal inquiries the Trustee

apparently made before arriving at the decision to commence these adversary

proceedings. In this regard, an analysis of the Trustee's request for relief under § 329 will further elaborate on this and on why dismissal of the two complaints is warranted.

*Preferential Transfers*

Each complaint alleges that the Defendant is the recipient of a preferential transfer. *Compare* Ciardi Complaint, Count IV *with* Law Firm Complaint, Count II. Section 547(b) of the Bankruptcy Code authorizes a trustee in bankruptcy to avoid certain payments made within ninety days before the debtor files for bankruptcy as "preferential transfers." This section states, in pertinent part:

> [A] trustee may avoid any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—
>
> (A) on or within 90 days before the date of the filing of the petition;
>
> * * *
>
> (5) that enables such creditor to receive more than such creditor would receive if—
>
> (A) the case were a case under chapter 7 of this title;
>
> (B) the transfer had not been made; and
>
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (emphasis added). The purpose of this provision is "to ensure that creditors are treated equitably, both by deterring the failing debtor from treating preferentially its most obstreperous or demanding creditors in an effort to stave off a

4

hard ride into bankruptcy, and by discouraging the creditors from racing to dismember the debtor." *Fiber Lite Corporation v. Molded Acoustical Products, Inc. (In re Molded Acoustical Products, Inc.)*, 18 F.3d 217, 219 (3d Cir.1994).  A complaint to avoid preferential transfers must include the following information in order to survive a motion to dismiss:

> (a) an identification of the nature and amount of each antecedent debt; and
>
> (b) an identification of each alleged preference transfer by
>
> (i) date,
>
> (ii) name of debtor/transferor,
>
> (iii) name of transferee and
>
> (iv) the amount of the transfer.

*In re Universal Marking Inc.,* 460 B.R. 828, 835-836 (Bkrtcy.E.D.Pa. 2011).

*Preference Claim*
*Against Mr. Ciardi*

The claim of a preference as to Mr. Ciardi is not based on a direct transfer of money.  Rather, it is alleged that he owed the Debtor money for services rendered to him personally and that the Debtor forgave that debt.  Specifically, it is alleged that for work performed on his homes, he owed the Debtor upwards of $68,000.  The Debtor, however, is alleged to have cancelled or written off that debt entirely.  *See generally* Ciardi Complaint, ¶¶ 46-55.

*Transfer*

Beginning with the first element, the Court analyzes the Complaint to determine if a "transfer" to Ciardi is alleged.  The term transfer is broadly defined in the Code.  *See* 11 U.S.C. § 101(54).  Forgiveness of debt has been recognized to constitute a transfer

for purposes of the Code's avoidance provisions.  *See Horan v. Baer,* 2011 WL 601652, at *1 (D.Md., Feb. 11, 2011).  Accordingly, the Court finds that a transfer is alleged.

*To Or For The Benefit Of A Creditor*

Next, the Complaint alleges that the "Transfer was made to or for the benefit of Defendant who was a creditor of the Debtor."  Ciardi Complaint, ¶ 50.  This assertion is at odds with the thrust of the Complaint, which is that it is Ciardi who *owed the Debtor* for work performed for him personally.  The Law Firm is alleged to have been a creditor of the Debtor because it rendered legal services to it.  The Court, however, finds that the complaint fails to allege that individual Defendant Ciardi was a creditor who received the transfer in question or the benefit of it.

*Antecedent Debt*

The Complaint next alleges that the "Transfer was made for or an account of an antecedent debt owed by the Defendant to Debtor before such Transfer was made." *Id.,*¶ 51. The Complaint again reverses the required obligation:  whereas the statute requires the antecedent debt to be *owed by the debtor*, the complaint alleges that it is here *owed by the Defendant* (i.e., Ciardi).  The Complaint thus fails to plead this element of a preference claim as well.

For these reasons, Count IV of the Ciardi Complaint will be dismissed.

*Preference Claim*
*Against Law Firm*

The preference count against the Law Firm pleads two direct transfers which total $100,000.  Law Firm Complaint, ¶ 40.  The first transfer to the Law Firm (in the amount of $50,000) is alleged to have been made by John and Lucille Parks on

November 17, 2011.  ¶ 27.  The second transfer is alleged to have been made by the

Debtor to the Law Firm on November 18, 2011 in the amount of $50,000.  ¶ 24.

At the outset, and as to the first transfer, the Court does not read the Complaint

to assert the "transfer of an interest of the Debtor in property."  The first transfer came

not from the Debtor but from one of its principals (John Parks) and his wife.  There is no

allegation that the money which came out of the Parks' account was the Debtor's

money, or property in which the Debtor had an interest.  There is only a vague allusion

to such possibility when the Trustee states that he has "not been able to determine the

origin of the funds in the joint account of the Parks to allow [*sic*] the above-referenced

payments to the Defendant Law Firm…"  ¶ 29.

As to the second transfer, the allegation is that the Debtor wrote a check to the

Law Firm but then voided it.  The funds received by the Law Firm from the second

transfer came via a cashier's check but there is no allegation that these were the

Debtor's funds.  With respect to each of the Law Firm transfers the Trustee's complaint

rests on speculation.

For these reasons the preference count against the Law Firm will be dismissed.

*Bankruptcy Code*
*Fraud Provisions*

Both Complaints allege fraud under § 548 of the Bankruptcy Code.  Each

proceeding alleges the Defendant received transfers that were the product of actual

fraud, as well as constructive fraud on the Debtor's part.  The Bankruptcy Code's

express provision regarding such forms of fraud provides:

> The trustee may avoid any transfer (including any transfer to
> or for the benefit of an insider under an employment
> contract) of an interest of the debtor in property, or any

obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--

(A) made such transfer or incurred such obligation with *actual intent to* hinder, delay, or *defraud* any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B)(i) received *less than a reasonably equivalent value* in exchange for such transfer or obligation; and
(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1) (emphasis added).

As stated, *supra*, fraud claims must be plead with heightened specificity.   See Federal Rule of Civil Procedure 9(b) (requiring that allegations of fraud be pleaded with specificity); *see also Saporito v. Combustion Engineering*, 843 F.2d 666, 673 (3d Cir.1988) rev'd on other grounds 489 U.S. 1049, 109 S.Ct. 1306, 103 L.Ed.2d 576 (1989). In order to satisfy Rule 9(b), plaintiffs must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v.*

8

*Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984).  Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.* (holding that a plaintiff satisfied Rule 9(b) by pleading which machines were the subject of alleged fraudulent transactions and the nature and subject of the alleged misrepresentations).

Context and circumstances will define the level of specificity.  As a leading commentator explains, the degree of particularity required under Rule 9(b) rests on the nature of the underlying fraud claim.  5A *Fed. Prac. & Proc. Civ.* § 1298 (3d ed.).  While a simple allegation of fraud may not suffice under the Bankruptcy Code, this standard is relaxed where the plaintiff is a trustee in bankruptcy, because "of the trustee's 'inevitable lack of knowledge concerning acts of fraud previously committed against the debtor, a third party.'" *In re Harry Levin, Inc., 17*5 B.R. 560, 567 (Bkrtcy.E.D.Pa. 1994). Nonetheless, even under the more relaxed Rule 8(a) standard, the plaintiff must provide more than mere legal conclusions and cannot simply repeat the elements of the cause of action.  *Mervyn's LLC v. Lubert–Adler Grp. IV (In re Mervyn's Holdings, Inc.)*, 426 B.R. 488, 494 (Bankr.D.Del.2010)

*Actual Fraud Under
The Bankruptcy Code*

Subparagraph (A) of § 548(a)(1) codifies a claim of "actual fraud."  It is identical to the description of actual fraud found in the Uniform Fraudulent Transfer Act which Pennsylvania has adopted. [3] *See* 12 P.S. § 5104(a)(1) (the "PUFTA").  Both statutory provisions provide for the avoidance of transfers made with actual intent to hinder,

---

[3] 12 P.S. § 5101 et seq.

delay, or defraud creditors. *See In re Valley Bldg. & Const. Corp.*, 435 B.R. 276, 285

(Bankr.E.D.Pa.2010). To state a claim for avoidance of a transfer based upon actual

fraud under both the Bankruptcy Code, 11 U.S.C. § 548(a)(1)(A), and PUFTA, 12

Pa.C.S. §§ 5104(a)(1), a plaintiff must allege that the debtor made the transfer with the

actual intent to hinder, delay or defraud a creditor. *Image Masters, Inc. v. Chase Home

Finance*, 489 B.R. 375, 393 (E.D.Pa. 2013). The pleading requirements for such claims

are set out by Rule 9(b), which requires a trustee to "plead the circumstances

constituting the alleged fraudulent conveyances with particularity." *Id.* quoting *Bratek v.

Beyond Juice, LLC,* 2005 WL 3071750, at *6 (E.D.Pa. Nov. 14, 2005). Nevertheless, a

trustee may plead intent generally under the second sentence of the rule. *Id.* citing

*River Road Dev. Corp. v. Carlson Corp.–Ne.,* 1990 WL 69085, at *10 (E.D.Pa. May 23,

1990).

The PUFTA lists certain "badges of fraud" to assist courts in determining whether

actual fraud is present. This nonexclusive list includes whether:

> (1) the transfer or obligation was to an insider;
>
> (2) the debtor retained possession or control of the property
> transferred after the transfer;
>
> (3) the transfer or obligation was disclosed or concealed;
>
> (4) before the transfer was made or obligation was incurred,
> the debtor had been sued or threatened with suit;
>
> (5) the transfer was of substantially all the debtor's assets;
>
> (6) the debtor absconded;
>
> (7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

12 P.S. § 5104(b). These same factors are used by courts when determining actual

intent under 11 U.S.C. § 548(a)(1)(A). *See In re Valley Bldg. & Const. Corp.*, 435 B.R.

at 285–86.

*Constructive Fraud*

In addition to actual fraud, § 548 also allows a trustee to recover transfers which

are rendered fraudulent as a result of the circumstances under which they were made:

(a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, … if the debtor voluntarily or involuntarily-
* * *
(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider,

under an employment contract and not in the ordinary
course of business.

11 U.S.C. § 548(a)(1)(B).  In order to state a claim for avoidance of a transfer based

upon constructive fraud under subsection (B) of § 548(a)(1), a plaintiff must allege,

among other things, facts demonstrating that the debtor received less than a reasonably

equivalent value in exchange for such transfer or obligation.  *Image Masters, Inc. v.*

*Chase Home Finance*, 489 B.R. 375, 386-387 (E.D.Pa. 2013)  Like a claim alleging

actual fraud, a claim for constructive fraud is also subject to the higher standard of

specificity.  *See In re The Harris Agency, LLC*, 465 B.R. 410, 417 n.12

(Bkrtcy.E.D.Pa.2011) (noting the split of authority within this District, that the Third

Circuit has not yet ruled on the questions, and concluding that requiring the higher

pleading standard is within the court's discretion).

*Actual Fraud*
*Against Ciardi*

        In reviewing the actual fraud count against Ciardi, the Court finds but one badge

of fraud alleged therein; to wit, the Debtor's failure to have disclosed the forgiveness of

the receivable.  Other than that, no other indicia of fraud are plead.[4]  When the Trustee

is alleged to have demanded that Ciardi pay the receivable, Ciardi is said to have

responded that the Debtor's principals indicated that nothing was due.  ¶33.  That does

not standing alone suggest a wrongful motive on Ciardi's part.  Which is to say that the

Court does not discern an intent to defraud in the inconclusive statement the Trustee

relies so heavily upon.  In short, this count fails to sufficiently allege actual fraud on the

part of Ciardi.

---

[4] Insolvency is mentioned but only in the next count, constructive fraud.

*Constructive Fraud*
*Against Ciardi*

Count VIII alleges that the Debtor was either insolvent when the receivable was written off, was rendered insolvent as a result, or was otherwise financially impaired at the time. See Ciardi Complaint, ¶ 85. The allegation of insolvency, however, does not allege how the Trustee came to that conclusion. Neither is it discussed anywhere else in the Complaint. This matters given that unlike in a preference action, insolvency in a fraudulent transfer action is not presumed. *See In re The Brown Publishing Company*, 2014 WL 1338102, at *5 (Bkrtcy.E.D.N.Y., April 3, 2014). There being plead no facts in support of the claim of insolvency, Count VIII simply does not meet the level of specificity for constructive fraud. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008) (explaining that the factual allegations must be more than speculation)

The same also can be said for the next element alleged; to wit, that reasonably equivalent value in exchange for the receivable write-off was *not* received. Specifically, it is alleged that the "Debtor received no value in exchange for the Account Receivable and/or Transfer of the Account Receivable." ¶ 86. This allegation, too, is not supported by any allegation which would reflect that. The closest that Count VIII comes to that conclusion is the failure of the Debtor to have disclosed the receivable in either the Schedules or Statement of Financial Affairs. That omission, however, does not necessarily imply that the receivable should not have been written off. Again, it is elsewhere alleged that when the Trustee demanded that Ciardi pay the invoices, Ciardi replied that the Debtor's principals indicated that nothing was owing. ¶ 33. Taken at face value, that explanation could indicate that the receivable had no value. This possibility might, indeed it should, have prompted the Trustee to inquire of the Debtor's

principals as to whether the Defendant's explanation was true.  There is no indication,

however, that this was done.  As a result, the Court is left in the dark as to why the

receivable was written off.  This vagueness compels dismissal of the constructive fraud

claim against Ciardi.

*Fraudulent Transfers*
*To the Law Firm*

The fraudulent transfer counts (V and VI) in the Law Firm complaint seek to

recover the same two transfers which the Trustee characterized as preferential transfers

in Count II. There, the Court concluded that the second of the two transfers; to wit, the

transfer dated November 17, 2011 from the Parks to the Law Firm was not avoidable

because it was not a transfer of an interest of the Debtor in property.  For the same

reason, the same transfer is not sufficiently plead as fraudulent.  To the extent that the

fraud counts might plead viable causes of action, they might do so as against the first of

the prepetition transfers to the Debtor, the November 18, 2011 transfer from the Debtor

to the Law Firm in the amount of $50,000.  ¶ 24.  That is the subject of the following

analysis.

*Actual Fraud*
*Against the Firm*

In support of the claim that the prepetition payment from the Debtor to the Law

Firm is the result of actual fraud, the complaint pleads a single badge of fraud.  That is,

neither the Schedules nor the Statement of Financial Affairs disclose the prepetition

payment to the Law Firm.  But nowhere in the complaint is it suggested that such an

omission occurred by design.  Neither is it alleged that the Trustee inquired of the

Debtor's counsel or its principals as to the circumstances of the payments.  Nothing

14

alleged therein implies a scheme to defraud.  Like the actual fraud claim against Mr.

Ciardi, the claim against the law firm will be dismissed.

*Constructive Fraud*
*Against the Law Firm*

The allegations in the constructive fraud claim against the Law Firm are equally

thin.  As with the same claim against Ciardi, insolvency or other financial impairment is

alleged but without supporting facts.  As to allegations of reasonably equivalent value

(or lack thereof), the Trustee relies on the Debtor's failure to disclose the transfers in the

Schedules or Statement of Financial Affairs.  *See* Law Firm Complaint, ¶¶ 24-30.  But it

does not follow from non-disclosure that the transfer must have been either gratuitous

or disproportionate.  *Cf. Universal Marketing, supra,* 460 B.R. at 838 (finding that the

allegation that there is no record of a transaction bears no logical relationship to the

issue of reasonably equivalent value)   Accordingly, the constructive fraud claim against

the law firm will be dismissed.

*Turnover*

The Trustee has demanded that Ciardi turnover to him the value of the unpaid

receivable.  See Ciardi Complaint, Count II.  This claim is based on Bankruptcy Code §

542 which provides, in pertinent part, that "an entity ... in possession, custody or control,

during the case of property that the trustee may use, sell, or lease under § 363 of this

title ... shall deliver to the trustee, and account for, such property or the value of such

property ..." 11 U.S.C. § 542(a).  "Turnover under 11 U.S.C. § 542 is a remedy available

to debtors to obtain what is acknowledged to be property of the bankruptcy estate." *In re*

*Asousa Partnership*, 264 B.R. 376, 384 (Bankr.E.D.Pa.2001); *see also Creative Data*

15

*Forms, Inc. v. Pennsylvania Minority Business Development Authority (In re Creative Data Forms, Inc.)*, 41 B.R. 334, 336 (Bankr.E.D.Pa.1984) ("[I]f the debtor does not have the right to possess or use the property at the commencement of the case, a turnover action cannot be a tool to acquire such rights."), aff'd, 72 B.R. 619 (E.D.Pa.1985), aff'd, 800 F.2d 1132 (3d Cir.1986) (table).

Numerous courts have held that a turnover is not proper where a bona fide dispute exists. *See In re Allegheny Health Education and Research Foundation*, 233 B.R. 671, 677 (Bankr.W.D.Pa.1999) *citing U.S. v. Inslaw, Inc.*, 932 F.2d 1467, 1472 (D.C.Cir.1991) ("'It is settled law' that turnover actions under § 542 cannot be used 'to demand assets whose title is in dispute'") *see also In re 2045 Wheatsheaf Associates*, 1998 WL 910228, at *10 (Bankr.E.D.Pa.) (quoting *In re Johnson*, 215 B.R. 381, 386 (Bankr.N.D.Ill.1997), to the effect that "[t]urnover under § 542 of the Code 'is not intended as a remedy to determine disputed rights of parties to property. Rather, it is intended as a remedy to obtain what is acknowledged to be property of the bankruptcy estate.'"); *In re LiTenda Mortgage Corp.*, 246 B.R. 185, 195 (Bankr.D.N.J.2000) citing *In re CIS Corp., supra*, 172 B.R. at 760 ("The terms 'matured, payable on demand, or payable on order' create a strong textual inference that an action should be regarded as a turnover only when there is no legitimate dispute over what is owed to the debtor."); *In re F & L Plumbing & Heating Co.*, 114 B.R. 370, 376–77 (E.D.N.Y.1990) (explaining that where no set fund exists and other parties may have legal rights to the monies sought, no turnover action lies); *In re Ven–Mar Intern., Inc.*, 166 B.R. 191, 192–93 (Bankr.S.D.Fla.1994) (holding that § 542 does not provide a means to recover property where a dispute exists between the parties); *In re Matheney*, 138 B.R. 541, 546

(Bankr.S.D.Ohio 1992) (stating that an action is properly characterized as one for turnover when the trustee or debtor in possession is seeking to obtain property of the debtor, not property owed to the debtor); *In re Kenston Management Co.*, 137 B.R. 100, 107 (Bankr.E.D.N.Y.1992) (holding that an action for turnover only exists if the debt has matured and is "specific in its terms as to the amount due and payable"); *In re FLR Company, Inc.,* 58 B.R. 632, 634 (Bankr.W.D.Pa.1985) ("Implicit in the bankruptcy context of turnover is the idea that the property being sought is clearly the property of the Debtor but not in the Debtor's possession. Turnover, 11 U.S.C. § 542, is not the provision of the Code to determine the rights of the parties in legitimate contract disputes.")

The Third Circuit has explained that a "bona fide dispute" exists only when there is "a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts." *B.D.W. Associates v. Busy Beaver Bldg. Ctrs.*, 865 F.2d 65, 66 (3d Cir.1989) (adopting standard enunciated in *In re Busick*, 831 F.2d 745, 746 (7th Cir.1987) which, in turn adopted *In re Lough*, 57 B.R. 993, 997 (Bankr.E.D.Mich.1986) with gloss: requiring that the fact or legal issue in dispute be "substantial").  Applying this definition to Count II, the Court notes that the Trustee claims an interest in an asset which, by his own words, the Debtor had essentially abandoned and which Ciardi maintains does not exist.  By definition there is a dispute over the ownership of that asset.  Without belaboring the merits of the question the Court holds simply that no turnover claim is stated on these facts.

*Common Law Fraud*
*Against Ciardi*

A claim of common law fraud is directly solely at Ciardi.  *See* Ciardi Complaint, Count V.  The Bankruptcy Code affords a trustee the power to recover a transfer avoidable under applicable non-bankruptcy law.  *See* 11 U.S.C. § 544(b).  Pennsylvania common law defines a prima facie case of fraud as: (1) a representation; (2) that is material; (3) that is made with knowledge or reckless indifference of its falsity; (4) with intent to mislead another; (5) justifiable reliance; and (6) injury.  *Borough of Morrisville v. Kliesh,* 2014 WL 346589, at *9 (Pa.Cmwlth, Jan. 30, 2014); *Blumenstock v. Gibson*, 811 A.2d 1029, 1034 (Pa.Super.2002).

*Representation*

The Court fails to see where a representation made by Ciardi is alleged.  In that regard, the Complaint alleges that the misrepresentation was the failure to disclose the existence of the account receivable on the Schedules or Statement of Financial Affairs.  Complaint, ¶ 62.  Yet the very same paragraph alleges that it is not Mr. Ciardi who made that representation but the Debtor, by and through the Debtor's law firm.  *Id.*  So assuming that a representation was made, it is not attributed to Mr. Ciardi.

*Reliance*

Equally, and even assuming the misrepresentation could be attributed to Ciardi, the Court does not read the Complaint to allege reliance, justified or otherwise.  The filing of a bankruptcy schedule containing a material omission is alleged; however, there is no resulting allegation.  In other words, there is no allegation that the misrepresentation prompted any conduct that resulted in harm.  Fraud claims, by their

nature, are based in cause and effect.  *See In re Adler, Coleman Clearing Corp.*, 263

B.R. 406, 489 (S.D.N.Y. 2001) *quoting Restatement (Second) Torts* § 546 ("Reliance is

to fraud what proximate cause is to negligence; that is to say fraud and injury must bear

the relation of cause and effect.")  Nothing like that is alleged here: therefore, the

common law fraud claim in Count V of the Ciardi Complaint must be dismissed.

*Unjust Enrichment*

Count VI against Ciardi is based in equity.  Specifically, it attempts to plead a

case of unjust enrichment.  Pennsylvania courts have held that "'[u]njust enrichment' is

essentially an equitable doctrine." *Styer v. Hugo*, 422 Pa.Super. 262, 267, 619 A.2d

347, 350 (Pa.Super.Ct.1993).  In Pennsylvania, a party seeking to plead unjust

enrichment must allege the following elements: "(1) a benefit conferred on the

defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) the

defendant's acceptance and retention of the benefit 'under such circumstances that it

would be inequitable for defendant to retain the benefit without payment of value.'"

*Giordano v. Glaudio*, 714 F.Supp.2d 508, 530 (E.D.Pa.2010) (quoting *Filippi v. City of

Erie*, 968 A.2d 239, 242 (Pa.Commw.Ct.2009)). Under these circumstances, "the law

implies a contract between the parties pursuant to which the plaintiff must be

compensated for the benefits unjustly received by the defendant." *Styer*, 619 A.2d at

350. The existence of such a contract "requires that the defendant pay the plaintiff the

value of the benefits conferred...." *AmeriPro Search Inc. v. Fleming Steel Company*, 787

A.2d 988, 991 (Pa. Super. 2001).

While the complaint pleads both a benefit conferred and accepted, it does not

allege that Defendant's retention of such benefit would be an injustice.  It is alleged that

"upon discovery of the missing Account Receivable, the Trustee requested payment

thereof from the Defendant and that "in response, Defendant insisted that the Principals

of Debtor indicated that 'no amount is due and owing.'"" Ciardi Complaint, ¶¶ 32, 33.  To

the Trustee, the fact that the Defendant's firm had a confidential relationship with the

Debtor (or its principals) and that Defendant has not provided proof of payment is

enough to infer some wrongful conduct on his part.  *Id.* ¶ 34.

The Court does not read the allegations that broadly.  Significant here is how

Defendant is alleged to have responded to Trustee's demand for payment.  He did not

ignore the demand or merely say that it did not owe the money.  Instead, Defendant

responded that the Debtor's principals indicated that nothing was owed.  There is

nothing wrongful to necessarily be inferred from that explanation.  If the Trustee

believed otherwise, certainly then it was incumbent upon him to do something to either

confirm or discredit the explanation.  There is no indication that the Trustee did

anything.  For that reason, the Court cannot say that the complaint against Ciardi pleads

unjust enrichment in its present form.

*Post-Petition Transfers*

The Trustee also seeks to recover from the Law Firm what it describes as

unauthorized post-petition transfers.  *See* Law Firm Complaint, Count III.  Section 549

of the Bankruptcy Code allows a trustee to avoid certain transfers of property made

after a bankruptcy filing.  The section provides, in pertinent part:

> (a) Except as provided in subsection (b) or (c) of this section,
> the trustee may avoid a transfer of property of the estate--
>
> (1) that occurs after the commencement of the case; and

(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

(b) In an involuntary case, the trustee may not avoid under subsection (a) of this section a transfer made after the commencement of such case but before the order for relief to the extent any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, is given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has.

11 U.S.C. § 549(a),(b).  It is alleged that the Law Firm received transfers from the Debtor after the commencement of the case, which transfers were not authorized under the Bankruptcy Code or by the court.  See Law Firm Complaint, ¶¶ 50, 51.  That, however, might suffice for purposes of alleging a postpetition transfer under subsection (a) of § 549.  In this case, however, the transfers in question were made in an involuntary bankruptcy case.  Specifically, they were made between the date of the filing of the involuntary petition and the date that the Court entered an order for relief.  The petition was filed on December 20, 2011 and the order for relief was entered on February 9, 2012.   The Complaint alleges that the postpetition transfers were made on February 3, 2012.  According to subsection (b) above such transfers may only be recovered to the extent no value was given in exchange for such transfers.  The count does not allege a lack of value given in exchange; therefore, Count III against the Law Firm for the avoidance of post-petition transfers will be dismissed.[5]

---

[5] Having determined that each of the avoidance counts against the Law Firm fails to state a cognizable claim, the count for recovery of avoidable transfers in Count IV is rendered moot.

*Breach of Fiduciary Duty*

Count VIII of the complaint against the law firm alleges a breach of fiduciary duty. Fiduciary status is defined by statute as well as common law. Pennsylvania's Corporations and Unincorporated Associations law establishes a fiduciary duty owed by directors and officers to their corporation. *See* 15 P.S. § 512; *see also Miller v. Dutil (In re Total Containment, Inc.)*, 335 B.R. 589, 602 (Bankr.E.D.Pa.2005) (stating that officers and directors of a corporation are considered fiduciaries under the Pennsylvania law of corporations). Case law expands the scope of fiduciary responsibility to dominant or controlling shareholders. *See Pepper v. Litton,* 308 U.S. 295, 306, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939). When a corporation is insolvent, the fiduciary duty of the controlling shareholders arises in favor of corporate creditors. *See Travelers Casualty and Surety Co. v. Irex Corp.,* 2002 WL 32351176, at *3 (E.D.Pa., May 31, 2002) ("Cases interpreting Pennsylvania law hold that a controlling shareholder is a fiduciary of the corporation as are corporate officers; cases further hold that a fiduciary relationship develops between a controlling shareholder and creditors of the corporation, as it does between officers of the corporation and creditors of the corporation, at the point the corporation becomes insolvent.")

A confidential relationship will also give rise to a fiduciary duty. *Basile v. H & R Block, Inc.,* 2001 WL 460913, at *4-5 (Pa.Super.Ct. May 3, 2001). "The essence of [a confidential] relationship is trust and reliance on one side, and a corresponding opportunity to abuse that trust for personal gain on the other." *Id.* at *4 (quoting *In re Estate of Scott,* 455 Pa. 429, 432, 316 A.2d 883, 885 (1974). A confidential relationship thus exists where the parties do not deal on equal terms, "but, on the one side there is

an overmastering influence, or on the other, weakness, dependence or trust, justifiably reposed." *Id.* (quoting *Frowen v. Blank,* 293 Pa. 137, 145-46, 425 A.2d 412, 416-17 (1981).

The Complaint alleges that "the Defendant Law Firm, as legal counselor to the Debtor owes a fiduciary duty to its creditors."  ¶ 79.  The Law Firm maintains that an attorney for a prepetition debtor owes a duty of fiduciary care solely to its client.  Law Firm's Motion to Dismiss, ¶ 57.  In Chapter 11, an attorney representing a debtor in possession "owe[s] a broad-based duty of care, candor, and undivided loyalty to the chapter 11 debtor." *In re Mushroom Transportation Company, Inc.*, 366 B.R. 414, 440 (Bkrtcy.E.D.Pa.2007); *see also ICM Notes, Ltd, v. Andrews & Kurth, LLP*, 278 B.R. 117, 123 (S.D.Tex. 2002)("it is undisputed that counsel of a debtor in possession owes certain fiduciary duties to both the client debtor in possession and the bankruptcy court."); *In re Harp,* 166 B.R. 740, 748 (Bankr.N.D.Ala.1993); *In re Wilde Horse Enterprises, Inc.,* 136 B.R. 830, 840 (Bankr.C.D.Cal.1991) ("[C]ounsel for a corporate Chapter 11 debtor in possession owes a fiduciary duty to the corporate entity estate— the client—and represents its interests, not those of the entity's principals.").  This case, however, began as an involuntary proceeding and an order for relief was entered under Chapter 7.  As such, the Debtor was never in possession of the estate.  *In re Morey*, 416, B.R. 364, 367 (Bkrtcy.D.Mass.2009) (explaining that debtor's counsel's duty is to the client).  To the extent that a confidential relationship necessarily existed, it did so as

between the firm and the Debtor.  Accordingly, the claim for breach of fiduciary duty will

be dismissed.[6]

*Section 329 Request*

Having disposed of the affirmative requests for relief, the Court turns to the

Trustee's injunctive demands.  As to Ciardi, it is requested that the "Court analyze the

improper write-off [or set off] of the Account Receivable due Debtor for services

performed for Ciardi and compel him to explain why the receivable was not disclosed

and paid to the estate.  *See* Ciardi Complaint, ¶36-37.  As to the Law Firm, the same

relief is requested as to the pre- and post-petition transfers from the Debtor.  *See* Law

Firm Complaint ¶ 38.  The Trustee bases these requests on Bankruptcy Code § 329

which provides:

> **(a)** Any attorney representing a debtor in a case under this
> title, or in connection with such a case, whether or not such
> attorney applies for compensation under this title, shall file
> with the court a statement of the compensation paid or
> agreed to be paid, if such payment or agreement was made
> after one year before the date of the filing of the petition, for
> services rendered or to be rendered in contemplation of or in
> connection with the case by such attorney, and the source of
> such compensation.
>
> **(b)** If such compensation exceeds the reasonable value of
> any such services, the court may cancel any such
> agreement, or order the return of any such payment, to the
> extent excessive, to--
>
> **(1)** the estate, if the property transferred--
>
> **(A)** would have been property of the estate; or
>
> **(B)** was to be paid by or on behalf of the debtor under a plan

---

[6] At the hearing, the Trustee's counsel acknowledged that the factual premises of this count might better
support a claim of *aiding and abetting* a breach of fiduciary duty.  N.T. 3/19/2014, at 34.  Nothing in this
ruling would have a bearing on such a cause of action if later plead.

under chapter 11, 12, or 13 of this title; or

**(2)** the entity that made such payment.

11 U.S.C. § 329.  There is a duty to disclose all compensation paid or agreed to be paid

by the debtor.  *In re Berg*, 356 B.R. 378, 380 (Bkrtcy.E.D.Pa. 2006). The Third Circuit

has explained that "the purposes of § 329, is to review payments made by debtors to

attorneys, even when those payments are made prior to the filing of a bankruptcy

petition. The Revision Notes and Legislative Reports to § 329 explain that 'Payments to

a debtor's attorney provide serious potential for evasion of creditor protection provisions

of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney,

and should be subject to careful scrutiny.'"  *In re Engel*, 124 F.3d 567, 572-573 (3d

Cir.1997); *see also In re the Harris Agency,* 468 B.R. 702, 707 (Bkrtcy.E.D.Pa.2010)

(explaining that  "under section 329 and Bankruptcy Rule 2016(b) [an attorney's

disclosure statement] must disclose the source of ... compensation, even if the source is

not the debtor but a third party entity."); and *see also* 3 *Collier on Bankruptcy* ¶ 329.02

(16th ed. 2014) (further noting that "disclosure under Rule 2016(b) must be clear, direct,

candid and complete.")

There is no doubt that § 329 requires the Law Firm to disclose the amount of all

compensation which it received from the Debtor in the year prior to bankruptcy.  Despite

the Law Firm's claim to the contrary (see Law Firm's Brief, 8), it represented the Debtor

in contesting the involuntary petition and after the Order for Relief in preparing the

Schedules and Statement of Financial Affairs.  See Case No. 11-19633, Docket, ## 10,

73-82.  So the Law Firm will be required to file a statement of compensation as required

by § 329 and its corresponding Rule 2016(b).

However, § 329 is not intended for the type of use envisioned by the Trustee

here. The "analysis" which the Trustee would have the Court undertake for him is to

assist him determining the extent of avoidable transfers from the Debtor to the

Defendants. Yet this is already among the responsibilities of a trustee under Chapter 7.

See 11 U.S.C. § 704(a)(1),(4) (listing among the trustee's duties "the collect[ion] of and

reduc[tion] to money the property of the estate" and "the investiga[tion] of the financial

affairs of the debtor.") To aid the Trustee in fulfilling this duty, the Bankruptcy Rules

empower the Trustee to examine any entity with regard to the "acts, conduct or property

or to the liabilities and financial condition of the debtor, or to any matter which may

affect administration of the estate..." B.R. 2004(b). The Court is puzzled as to why this

was not done. It cannot be put down to time pressure. The docket reflects that the

present Trustee was appointed on April 26, 2013, yet this action was not filed until

January 22, 2014, less than one month before the expiration of the statute of limitations.

The Trustee had a full 8 months to investigate the instant claims before bringing suit.

In that interval the docket reflects that he retained an accountant and filed avoidance

actions against other defendants, but there is no indication that he sought to examine

either Ciardi or his law firm. When the Court asked Trustee's counsel why the Trustee

waited so long to file suit, counsel had no explanation. N.T. 3/19/2014, at 37. Under

the circumstances, the Court finds that answer unsatisfactory. Had the Trustee

attempted to examine the defendants and been rebuffed, the picture might be different,

and the Court certainly would have compelled their examination.

At the hearing on March 19, 2014 the Trustee's counsel dismissed any

significance attached to the apparent lack of any meaningful prepetition investigation on

26

the Trustee's part, arguing that the Trustee is not required to take a Rule 2004

examination prior to commencing litigation.  This is correct as a purely technical matter.

However, the Trustee nevertheless is required to make a "reasonable inquiry."  See

B.R. 9011(b)(2) (requiring that allegations and other factual contentions in a pleading

have evidentiary support or be likely to have evidentiary support "formed after

reasonable inquiry under the circumstances.")   The Trustee's Complaints in this respect

state as follows:

> 19.    On April 26, 2013, Terry P. Dershaw, Plaintiff herein, was
> appointed Successor Trustee of the above-captioned Estate and is so
> acting.
>
> 20.    During the time and subsequent to the date on which the Motion to
> Compel Debtor to File Schedules and Statement of Financial Affairs was
> withdrawn by the Trustee, the Successor Trustee, Plaintiff herein, by and
> through his professionals, has investigated the acts and conduct of
> Debtor, its principals and others and has found various transactions
> involving Defendant and his Law Firm which were troublesome to Trustee.

Ciardi Complaint, ¶¶ 19-20, and

> 19.    On April 26, 2013, Terry P. Dershaw, Plaintiff herein, was
> appointed Successor Trustee of the above-captioned Estate and is so
> acting.
>
> 20.    During the time and subsequent to the date on which the Motion to
> Compel Debtor to File Schedules and Statement of Financial Affairs was
> withdrawn by the Trustee, the Successor Trustee/Plaintiff herein, by and
> through his professionals, has investigated the acts and conduct of
> Debtor, Principals and others, including a partnership known as Kirk/Parks
> Enterprises (the "Partnership"), which owns the building in which Debtor
> operated and in which Debtors' sole Principals are the sole partners, and
> has found various transactions involving Ciardi and Defendant Law Firm
> which were troublesome to Trustee.

Law Firm Complaint, ¶¶ 19-20

In the opinion of the Court the Trustee's foregoing averments imply a degree of inquiry by himself and/or others which never took place.  The Successor Trustee apparently took notice of certain acts and conduct of which he here complains, decided he found them "troublesome" and on the strength of that filed a complaint containing a multitude of highly serious and potentially damaging charges against the Defendants. The supporting information he claims to lack seems quite straightforward.  It is "troublesome" to the Court that, rather than pursue what should have been elementary efforts to obtain basic information to support his suspicions, the Trustee with token effort adopted the proverbial "shoot first and ask questions later" approach to these weighty lawsuits.  The Trustee's Complaints were obviously hastily put together.  As noted, for example, he included counts objecting to Proofs of Claim which were never even filed. A cursory review of the claims register would have yielded that information.[7]  All of this is particularly disturbing given the fact that the Trustee seemingly had adequate time and resources available to him to make a reasonable inquiry into the damaging claims he asserts. Accusing a member of the bar and his law firm of bankruptcy fraud is a serious matter. Certainly it must be predicated on more than a troublesome feeling and conjecture. Here it is not.

*Summary*

For the foregoing reasons, the Motions of the Defendants to Dismiss the respective Complaints will be granted.  The Complaints are dismissed, without prejudice.  The law firm of Ciardi, Ciardi & Astin, P.C. shall file a Rule 2016(b) statement within 20 days of the date of the attached Order.

---

[7] The carelessness evident in the turnover counts and preference counts also buttresses this conclusion.

An appropriate Order follows.

By the Court:

_____
Stephen Raslavich
United States Bankruptcy Judge

Dated: <u>May 1, 2014</u>